[909 NYS2d 891]

In the Matter of DAVID G. and Others, Children Alleged to be Neglected. BLOSSOM B. et al., Respondents.

Family Court, Kings County, October 15, 2010

## APPEARANCES OF COUNSEL

*Brooklyn Family Defense Project*, Brooklyn (*Tara Urs* of counsel), for Blossom B., respondent. *Michael A. Cardozo, Cor-*

*poration Counsel*, Brooklyn (*Meredith Thomas* of counsel), for New York City Children's Services. *Etta Ibok*, New York City, for Omar G., respondent. *Legal Aid Society*, Brooklyn (*Erin Palacios* of counsel), Attorney for the Children.

**OPINION OF THE COURT**

EMILY M. OLSHANSKY, J.

The question presented by the instant case is whether the evidence adduced on New York City Children's Service's (NYCCS) direct case at the combined Family Court Act § 1027 hearing, for the child David, and Family Court Act § 1028 hearing, for the children Javel and Blossom, establishes imminent risk sufficient to warrant the children remaining in nonkinship foster care during the pendency of these proceedings. In the court's view, that question must be answered in the negative since any possible risk to the children from the father can be mitigated by the issuance of a temporary order of protection and an order that the mother reenter a domestic violence shelter and resume domestic violence counseling, as well as her participation in other recommended services.

Procedural History

This proceeding was initially commenced on June 3, 2010, when NYCCS filed petitions against respondent mother and respondent father pursuant to article 10 of the Family Court Act. The petitions alleged that the mother and father failed to provide a minimum degree of care to their three children since the father committed acts of domestic violence against the mother in the presence of the children and both parents failed to ensure that the school-aged children attended school regularly.

Upon the filing of the petition, the court granted NYCCS's request for a removal of the children and directed that they be restrictively placed with the maternal grandmother. In addition, the court entered a temporary order of protection against the father. That order directed the father to refrain from committing any family offenses against the children or the maternal grandmother and stay away from them except for visitation supervised by the grandmother or the agency.

Shortly thereafter, the grandmother and the children traveled to Pennsylvania to visit with relatives. When she and David subsequently returned to New York City, Javel and Blossom remained in Pennsylvania with family members. Although NYCCS was apparently aware of this arrangement, the record fails to establish whether or not they actually agreed to it.

On August 13, 2010, the mother requested a Family Court Act § 1028 hearing for the child, David. She did not request the immediate return of Javel and Blossom because they were staying with relatives where they were safe, happy and attending school. The hearing, conducted by Honorable Stewart Weinstein, concluded on August 20, 2010, when the court granted the mother's application and directed that David be returned to her. Judge Weinstein issued a temporary order of protection against the father on behalf of the mother and David. That order directed the father to refrain from committing any family offenses against the child or the mother and to stay away from them, except for visitation supervised by the agency. Judge Weinstein ordered that the mother enforce the terms of the temporary order of protection, comply with NYCCS referrals for a confidential domestic violence family shelter, comply with ongoing domestic violence counseling and cooperate with NYCCS supervision, including announced and unannounced visits.

Shortly thereafter, the mother and David entered a domestic violence shelter through Prevention Assistance and Temporary Housing (PATH). They remained at the shelter until September 8, 2010, when the mother learned that the father had followed her there from the home of the maternal grandmother and that he knew where she was staying. Consequently, the mother and David were forced to leave the shelter.

On or around September 12, 2010, they returned to PATH to await placement in a different domestic violence shelter. Shortly thereafter, they left PATH and went to stay with a maternal aunt. Several days later, the mother was discharged from PATH for failing to sign in for a period of 48 hours. During the week that followed, the mother did not contact NYCCS or attend therapy.

NYCCS made little effort to find her. It failed to contact known members of her family.

Although the mother and David had been repeatedly displaced and forced to relocate as a result of the father's actions and although he had allegedly violated the temporary order of protection, NYCCS took no action against him. Instead, on September 14, 2010, the agency requested, and the court granted, a warrant for the mother to produce David in court.

On September 20, 2010, after learning of the warrant, the mother voluntarily appeared in court and the warrant was vacated. Later that day, after the court appearance, NYCCS

conducted a "child safety conference." At the conclusion of the conference, the agency removed David from his mother's care for the second time. Although the parties had been in court all day, and were again in court all of the following day, NYCCS removed David without a court order. He was then placed in nonkinship foster care.

On September 21, 2010, NYCCS moved by order to show cause for the remand of David. By that point, caseworkers had already removed Javel and Blossom from the family home in Pennsylvania and placed them in nonkinship foster care in New York City. Accordingly, the mother requested a combined Family Court Act § 1027 hearing for David and a Family Court Act § 1028 hearing for Javel and Blossom. That hearing was conducted by this court that day.*

The Family Court Act § 1027 Hearing

At the hearing, NYCCS called one witness, caseworker Katherine M. Ms. M. testified that the continued removal of all three children was necessary in order to protect them from an imminent risk of harm to their lives and health. She asserted that the mother's circumstances had changed substantially since August 20, 2010, when Judge Weinstein ordered that David be returned to her care after the first Family Court Act § 1028 hearing.

According to Ms. M., the risk to the children was the result of the possibility that the mother might decide to return to the father. The basis for this assumption was never made entirely clear to the court. Ms. M. acknowledged that there was no evidence suggesting that the mother had, in fact, returned to the father or that she had even considered the possibility of doing so. Ms. M. testified that the mother said that she had not reconciled with the father. Ms. M. could not offer any other information that she had received from the children, other family members or workers at the shelter to suggest that the mother had even spoken to the father—let alone resumed her relation-

---

* This case had been originally assigned to a different judge who was not available to conduct the hearing on September 21, 2010 or the days that followed. Judge Weinstein, who is currently presiding over the Emergency Hearing Part, and who conducted the first Family Court Act § 1028 hearing, was unavailable on September 21 or 22, 2010. Accordingly, in order to comply with the statutory time frames, this court conducted the combined hearing on September 21, 2010. In conducting that hearing, the court considered only the events that transpired after the conclusion of the first Family Court Act § 1028 hearing and whether those events established imminent risk sufficient to warrant a modification of Judge Weinstein's August 13, 2010 orders.

ship with him. Ms. M. also testified that the mother had enforced the temporary order of protection against the father and that once the father learned of her location, she had no alternative except to leave the shelter.

Ms. M. testified that the agency was also concerned about the children's safety because the mother had failed to comply with some of the provisions of Judge Weinstein's order. Specifically, Ms. M. testified that the mother should have remained at PATH to await placement at another shelter, rather than go to the home of the maternal aunt. In addition, Ms. M. testified that the agency was concerned about the mother's temporary failure to keep the agency apprised of her whereabouts and the fact that she missed one therapy session. According to Ms. M., these acts of noncompliance established that the mother could not always be trusted to comply with court orders and raised doubts about the reliability of her statements, including her assertion that she and the father were no longer together. At the conclusion of NYCCS's direct case, the court granted the mother's prima facie motion and directed that the three children be returned to her care.

Legal Analysis

Whether analyzing a removal application under Family Court Act § 1027 or an application for the return of the children under Family Court Act § 1028, the court must determine whether removal is necessary to avoid imminent risk to the children's lives or health. In considering this question, the court must determine whether there is a risk of "serious harm or potential harm to the child[ren]"; there must be evidence that the harm or danger is "imminent," that is, "near or impending, not merely possible" (*Nicholson v Scoppetta*, 3 NY3d 357, 369 [2004]).

In addition, the court must consider whether the risk can be mitigated by reasonable efforts to avoid removal, such as issuing a temporary order of protection or providing services to the family (*id.* at 378-379; *Matter of Naomi R.*, 296 AD2d 503 [2d Dept 2002] [Family Court properly issued a temporary order of protection excluding the father from the home, rather than order a removal of the children, since his presence created imminent risk to the health and safety of the children and removing him protected the integrity of the family unit]; *see also Matter of Jesse J.*, 64 AD3d 598 [2d Dept 2009] [Family Court erred by granting a removal since there was insufficient evidence that the children would be at *imminent risk* in the mother's care and the court failed to consider whether reason-

able efforts could *mitigate* the risk]; *Matter of Jeremiah L.*, 45 AD3d 771 [2d Dept 2007] [Family Court erred by denying the parent's application for the return of the child without determining whether reasonable efforts were made prior to the hearing to prevent or *eliminate* the need for a removal]).

The plain language of the statute and the legislative history supporting it establish that

> "a blanket presumption favoring removal was never intended . . . Rather, a court must weigh, in the factual setting before it, whether the imminent risk to the child can be mitigated by reasonable efforts to avoid removal. It must balance that risk against the harm removal might bring, and it must determine factually which course is in the child[ren]'s best interests" (*Nicholson*, 3 NY3d at 378; *Matter of David Edward D.*, 35 AD3d 856, 857 [2d Dept 2006] [Family Court properly denied the request for a removal where the Department of Social Services failed to establish that imminent risk to the child's life or health by remaining with the father outweighed the harm that the child's removal might bring where the risk to the child from the mother could be eliminated by an order of protection prohibiting her from unsupervised contact with the child]; *Matter of Lanaya B.*, 25 Misc 3d 981 [Fam Ct, Kings County 2009] [Family Court ordered that the child be returned to the mother where the risk of emotional harm by continuing the removal outweighed any risk to the child in respondent's care where services were available to *mitigate* any such risk]).

The Legislature's goal in enacting these provisions was to place "increased emphasis on preventive services designed to maintain family relationships rather than responding to children and families in trouble only by removing the child[ren] from the family" (*Nicholson*, 3 NY3d at 374). As the Court of Appeals has emphasized, the public policy in this State is to keep families together whenever possible, while continuing to protect the health and safety of the children. Another goal of these requirements was to ensure that "[w]here one parent is abusive but the child may safely reside at home with the other parent, the abuser should be removed. This will spare children the trauma of removal and placement in foster care" (*id.* at 379, quoting Mem of Children and Families Standing Comm,

Bill Jacket, L 1989, ch 727, at 7). This goal is based on the well-recognized fact that when children are removed from their caretaker and home they experience emotional and psychological harm. Therefore, it is critically important that the harm children experience from removal not be unnecessarily prolonged and that they are returned to their parents as soon as possible if there is no *imminent risk* (*Matter of Marino S.*, 100 NY2d 361, 369-371 [2003]).

In *Nicholson v Scoppetta*, the Court of Appeals also addressed the standard for conducting an emergency removal without parental consent or a court order pursuant to Family Court Act § 1024. That section permits such a removal only

> "if there is reasonable cause to believe that the child is in such urgent circumstance or condition that continuing in the home or care of the parent presents an imminent danger to the child's life or health, and there is not enough time to apply for an order . . . Thus, emergency removal is appropriate where the danger is so immediate, so urgent that the child's life or safety will be at risk before an ex parte order can be obtained. The standard obviously is a stringent one" (*Nicholson*, 3 NY3d at 380-381 [citations omitted]).

In considering whether an emergency removal is warranted, the Court emphasized that there must be "persuasive evidence of serious ongoing abuse" and, "based upon the best investigation reasonably possible under the circumstances . . . reason to fear imminent recurrence. Since this evidence is the basis for the removal of a child, it should be as reliable and thoroughly examined as possible to avoid unnecessary harm to the family unit" (*id.* at 381 [citations omitted]).

In *Nicholson*, the Court also considered whether the possibility of emotional harm to a child from witnessing acts of domestic violence is sufficient to satisfy the stringent requirements of Family Court Act § 1024. The Court cautioned that emergency removals are only warranted in "very grave circumstances of danger to life and health" (*id.* at 381). The Court emphasized that "[n]ot every child exposed to domestic violence is at risk of impairment. A fortiori, exposure of a child to violence is not presumptively ground for removal, and in many instances removal may do more harm to the child than good" (*Nicholson*, 3 NY3d at 375). Consequently, while the Court could not speculate "for all future time, that the possibility can *never* exist" it emphasized that an emergency removal based on the possibility

of future emotional harm would only be warranted in "rare circumstances in which the time would be . . . fleeting and the danger . . . great" (*id.* at 381-382).

The Second Circuit applied a similar standard in *Tenenbaum v Williams* (193 F3d 581, 593-594 [2d Cir 1999]). In that case, the court considered whether a removal of a child without parental consent or judicial authorization violated the rights of parents and children. The court concluded that in emergency circumstances

> "a child may be taken into custody by a responsible State official without court authorization or parental consent. Emergency circumstances mean circumstances in which the child is immediately threatened with harm . . . [T]he mere possibility of danger is not enough. If it were, officers would always be justified in seizing a child without a court order whenever there was suspicion that the child might have been abused" (*id.* at 594 [citations and internal quotation marks omitted]).

The Instant Case

 In the case at bar, having viewed the evidence in the light most favorable to NYCCS, the court finds that continued removal is unnecessary to avoid imminent risk to the children's lives or health. In addition, the court finds that any risk presented by the father's actions can be mitigated by continuing the temporary order of protection and by providing services to the family to ensure their safety. Further, the court finds that NYCCS has violated a number of the basic principles outlined in *Nicholson v Scoppetta* (3 NY3d 357 [2004]).

Speculation That a Parent May Violate a Court Order Does Not Establish Imminent Risk

 The emergency removal of the child David was based on assumptions, guesswork and unsupported predictions of future behavior. These cannot substitute for proof and are insufficient to establish a risk of "serious harm or potential harm to the child." The mere possibility that, at some future point, the mother could resume her relationship with the father, that the father could commit acts of domestic violence against her, that these acts could take place in the presence of the child and that the child could suffer emotional harm as a result, is not proof of danger that is "imminent," "near or impending." As the Court of Appeals and the Second Circuit have held a "mere possibility" of harm is insufficient. If it were, courts would be required

to uphold virtually every removal since there is always a possibility that at some future point a party may violate a court order.

## Assertions That a Parent has Failed to Comply with Certain Aspects of a Prior Court Order Do Not Establish Imminent Risk Absent Evidence of Impairment

■ The fact that the mother may have briefly failed to comply with certain aspects of Judge Weinstein's order did not justify an emergency removal. The courts in this State have repeatedly held that a violation of a court order in an article 10 case is insufficient to establish imminent risk or neglect absent a showing that the violation caused impairment or imminent risk of impairment and that the risk outweighed the harm posed by removal (*Matter of Alexander B.*, 28 AD3d 547 [2d Dept 2006] [Family Court erred by ordering the removal of the children from the mother's care even though she violated an order of supervision since the risk posed by the removal outweighed any detriment arising from the mother's failure to comply with the court's order]; *Matter of Andre G.*, 64 AD3d 913 [3d Dept 2009] [proof of a violation of an order of protection is not sufficient by itself to establish neglect]; *Matter of Cummings Children*, Family Ct, Bronx County, Aug. 18, 2010, Ruiz, J., docket Nos. NN-27160-63/07, 49922/08, citing *Matter of Shannon ZZ.*, 8 AD3d 699, 701 [3d Dept 2004] [although respondent admitted she violated an order of protection by permitting her child to return home, there was no evidence that the child witnessed marijuana smoking or was at risk of being with anyone under the influence of the drug, therefore, respondent's violation did not cause or threaten any actual harm to the child and did not establish neglect per se]; *Matter of Tylena S. v Darin J.*, 4 AD3d 568, 571 [3d Dept 2004], *lv dismissed sub nom. Matter of Kurt J.*, 2 NY3d 759 [2004] [although respondent drank beer in the presence of the children in violation of an order of protection, this conduct was not sufficient to sustain a finding of neglect without evidence that it caused harm to the children or placed them at imminent risk of harm]).

In the instant case, NYCCS asserts that the mother violated Judge Weinstein's order by leaving PATH while awaiting placement at a different domestic violence shelter and temporarily failing to keep the agency apprised of her whereabouts. Assuming, without deciding, that these actions did, in fact, constitute a violation of Judge Weinstein's order, they did not cause harm to the children or place them at imminent risk of harm. In fact,

the evidence establishes that the mother complied with the order of protection, that she did everything possible to protect the children from exposure to further violence and that the children were being well cared for by the mother or other family members.

## An Allegedly Abusive Parent's Violation of an Order of Protection Does Not Establish Imminent Risk by a Nonabusive Parent

■ The father's alleged violation of the order of protection issued by Judge Weinstein at the conclusion of the first Family Court Act § 1028 hearing does not constitute a change in the mother's circumstances or establish that the children would be at imminent risk in her care. In *Nicholson v Williams* (203 F Supp 2d 153, 200 [ED NY 2002]), the District Court recognized that victimized mothers are at times accused of "failure to protect" their children rather than acknowledging the system's inability to hold the actual perpetrator of violence accountable. The court emphasized the importance of avoiding strategies that blame the nonabusive parent for violence committed by others or for failing to control a situation which is defined by the abusive parent's efforts to deprive the nonabusive parent of control. As the court noted, accusing a victim of domestic violence of neglect is inherently problematic.

> "Even ACS has at times indicated an understanding that accusing a battered woman of neglect is bad policy. A draft of the Division of Child Protection Domestic Violence Evaluation, dated September 14, 2001, suggests that while it may be desirable to hold batterers accountable by charging them with neglect when children witness domestic violence, charging the battered mother further victimizes the non-offending parent. The report also observes that there is a growing consensus that helping the non-offending parent protect herself and her children and holding the offender accountable is the preferred strategy for obtaining child safety and reducing future risk" (203 F Supp 2d at 201 [internal quotation marks and citation omitted]).

With these principles in mind, NYCCS had an obligation to explore measures short of removal to avoid the potential risk to the children posed by the father. In order to satisfy that obligation, NYCCS should have considered options to ensure that the father was held accountable for allegedly violating the temporary order of protection and to assist the mother in expediting her request for housing in a secure domestic violence shelter. Such

efforts would have been far more likely to enhance child safety, reduce future risk and spare the children the trauma of continued removal than seeking a warrant for the mother, risking the possibility that she would be taken into custody with the youngest child in her care and placing the three children in nonkinship foster care. It also would have furthered the public policy embodied in the case and statutory law by keeping the family together when possible to do so safely and helping the nonoffending parent protect herself and her children while holding the offender accountable.

## The Possibility of Future Emotional Harm was Insufficient to Justify an Emergency Removal in This Case

In the instant case, NYCCS failed to satisfy the statutory requirements for removing the child, David, without parental consent or a court order. Family Court Act § 1024 permits an emergency removal only where there is reasonable cause to believe that a child is in such urgent circumstances that continuing in the care of the parent presents an imminent danger and there is not enough time to apply for an order. The danger must be so immediate, so urgent, that the child's life or safety will be at risk before an ex parte order can be obtained (*Nicholson v Scoppetta*, 3 NY3d at 380-381). There must be "persuasive evidence of serious ongoing abuse" and "reason to fear imminent recurrence" (*id.* at 381). This stringent standard, rarely met in cases involving emotional injury, is met even less frequently in cases involving the risk of emotional injury from witnessing domestic violence (*id.* at 381-382).

In this case, NYCCS did not even allege—let alone introduce—persuasive evidence of serious ongoing abuse and a reason to fear imminent recurrence. Nor, did the petitioner introduce evidence that the child was in danger that was so immediate and so urgent that his life or safety would have been at imminent risk before an order could be obtained. In fact, the evidence is clearly to the contrary.

On September 20, 2010, when NYCCS effectuated the emergency removal, David was in his mother's care and staying at the home of his maternal aunt. The evidence establishes that he was well cared for. There is no indication that his father knew where he and his mother were staying or that he was otherwise in any immediate danger. There was more than sufficient time, entirely consistent with the child's safety, to seek a court order. In fact, NYCCS could have requested a court order at any time on September 20, 2010 or September 21, 2010, when the parties and their attorneys spent almost two entire days in court.

Since the risk to the child was not imminent and there was more than ample time and opportunity to seek a court order, there was no justification for the use of emergency, extrajudicial procedures. The decision to nevertheless conduct such a removal, in the aftermath of *Nicholson*, from a nonabusive parent, herself a victim of domestic violence, repeatedly rendered homeless by the actions of the alleged perpetrator, raises disturbing questions. This is particularly true here since a Family Court Act § 1028 hearing had already been conducted and a judicial determination already made that any risk to the child could be mitigated or ameliorated by reasonable efforts and a temporary order of protection. Nothing happened during the weeks following that determination to support this court reaching a different result—let alone NYCCS doing so without court authorization. By proceeding in this manner under these circumstances, NYCCS failed to comply with the standards set forth by the Court of Appeals and the Second Circuit.

Accordingly, with the following conditions, the children should be immediately released to the mother under NYCCS supervision.

Now, it is hereby ordered, that three subject children are temporarily released to the custody of the respondent mother pursuant to Family Court Act §§ 1027 and 1028, pending a final order of disposition or further order of the court, under the supervision of NYCCS and upon the following terms and conditions: respondent mother shall enforce the terms of a full stay away temporary order of protection against respondent father; respondent mother shall comply with NYCCS referrals for a confidential domestic violence family shelter; and respondent mother shall comply with ongoing domestic violence counseling; respondent mother shall cooperate with NYCCS supervision, including announced and unannounced home visits; and it is further ordered, that NYCCS and/or the agency are directed to assist the mother and the children in obtaining an immediate shelter placement, and then a placement in a domestic violence shelter as soon as possible; and it is further ordered, that the previously issued temporary order of protection is modified on behalf of the mother and the three subject children to direct that the father refrain from committing any family offenses against the mother or the children and stay away from them and that he not communicate with them by any means, including third-party contact, except for supervised visitation at NYCCS or the agency.