People v S.O. (2025 NY Slip Op 52013(U))

[*1]

People v S.O.

2025 NY Slip Op 52013(U)

Decided on December 12, 2025

Supreme Court, New York County

Weston, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 12, 2025
Supreme Court, New York County

The People of the State of New York

against
S.O., and OFFICE OF MENTAL HEALTH

SMZ-74198-25

For the Defendant:
Mr. Seth Gross, The Legal Aid Society of New York
For the People:
ADA Courtney Razner, ADA Lauren Angelo, New York County District Attorney's Office
For the Non-Party Respondent:
AAG Haley Hawkins, Office of the Attorney General

Cori Weston, J.

Relevant Factual Background & Procedural History
A New York County grand jury returned indictment 01855-2020, charging the defendant with one count of Criminal Sexual Act in the First Degree, Penal Law ("PL") § 130.50(1), and one count of Sexual Abuse in the First Degree, PL § 130.65(1). On June 18, 2025, Defense Counsel requested that the defendant undergo a mental health and competency examination pursuant to Criminal Procedure Law ("CPL") § 730. The mental health examiners issued a unanimous report which concluded that the defendant was unfit to proceed. At the subsequent court appearance on July 16, 2025, both the People and the defense confirmed the findings of the examination. The Court issued a written Order (hereinafter, the "Commitment Order") remanding the defendant to the custody of the New York State Office of Mental Health ("OMH") for restoration to fitness pursuant to CPL § 730. The Commitment Order directed that the defendant "be transferred into the custody of the Office of Mental Health no later than August 16, 2025," and expressly warned that failure to comply would result in a finding of contempt under Judiciary Law §§ 753(A) and 750(A).
On September 16, the defendant filed an order to show cause as to why OMH should not be held in contempt. Defense counsel advised that despite the Court's mandate, OMH had not taken custody of the defendant, and the defendant remained housed at Rikers Island. Furthermore, defense reported that OMH anticipated admission would not occur until "sometime in December." On October 8, 2025, OMH filed an affirmation and memorandum of law in opposition.
On October 16, 2025, this Court held a hearing to determine whether OMH should be [*2]held in contempt for failing to timely comply with the Court's July 16, 2025 Commitment Order directing OMH to take custody of the defendant no later than August 16, 2025. At the time of the hearing, the defendant was still incarcerated on Riker's Island, despite the fact that 61 days had elapsed since the August 16th deadline set by the court. The Court relied on the written submissions and oral arguments to determine that OMH failed to comply with an unequivocal mandate of the Commitment Order and was therefore held in civil contempt of the Court's July 16, 2025, order.
At the defendant's request, the Court bifurcated the proceedings and set a briefing schedule on the remaining issue of damages. On October 31, 2025, the defendant filed a memorandum of law in support of awarding damages ("Def. Memorandum of Law"). On November 12, 2025, OMH filed a memorandum of law in opposition ("OMH Memorandum of Law").

Legal Analysis
Judiciary Law § 753(A) authorizes the Court to hold individuals or parties in civil contempt for disobeying lawful mandates of the court. To sustain a finding of civil contempt, the movant must establish that: (1) a Court Order establishing an unequivocal mandate was in effect and was disobeyed, (2) the party knew about the Order, regardless of whether it was actually served on the party, and (3) the rights of a party to the litigation were prejudiced. (See McCain v Dinkins, 84 NY2d 216 [1994]; see also People v. L.G., 83 Misc 3d 1030, 1032-33 [Sup. Ct. NY County 2024, Newbauer, J.], affd as mod, 238 AD3d 568 [1st Dept. 2025)]).
1. Civil Contempt Elements
Here, the parties concede that this Court issued an unequivocal order which mandated that OMH take custody of the defendant no later than August 16, 2025. The parties knew about the order and further concede that OMH did not take custody of the defendant by that date, and that as of the date of the hearing, the defendant remained in the custody of the New York City Department of Corrections ("DOC") and was being detained on Riker's Island.
The defendant has demonstrated that his rights were prejudiced. Once the court ordered the defendant be committed to the custody of OMH, he was entitled to begin psychiatric treatment to restore his competency. Instead, he has remained incarcerated at Rikers Island without receiving the treatment directed by the order. Under CPL § 730, once the parties confirmed the finding of unfitness and the Court issued the Commitment Order, the defendant was remanded to the custody of DOC while awaiting transfer. During this period, criminal proceedings are suspended, and the defendant cannot move his case forward to trial. As a result, the defendant has been prejudiced.
2. Affirmative Defense of Impossibility
In defense of their non-compliance, OMH argued the affirmative defense of impossibility. The Court found this argument unpersuasive. Courts evaluate a claim of impossibility with scrutiny and require the respondent to demonstrate that compliance was truly impossible despite diligent efforts. Structural limitations and resource shortages do not excuse disobedience of an unequivocal judicial mandate. (See Matter of Ayers v Coughlin, 72 NY2d 346, 353—355 [1988] [holding that "forthwith" means without delay and that capacity constraints do not permit the State to decide unilaterally when compliance is convenient]). The Court of Appeals reaffirmed this principle in McCain v Dinkins, 84 NY2d 216, 223—227 [1994], holding that even severe resource shortages, overwhelming demand, and logistical challenges do not [*3]provide a defense to contempt or relieve the obligation to meet court-ordered mandates.
New York courts continue to reject impossibility claims grounded in systemic delay or resource strain. In L.G., 83 Misc 3d 1030, the Honorable April Newbauer found OMH in civil contempt for failing to admit the defendant as required by a commitment order issued in June 2023. That decision, issued nearly two years ago, recognized that "OMH was well aware of the crisis in available beds for individuals found unfit before trial long before February 1, 2024, when L.G. filed her motion." (id. at 1037). When the First Department affirmed, it rejected OMH's impossibility defense and noted that OMH's own submissions demonstrated a longstanding, known problem for which OMH was statutorily obligated to pursue solutions. (See People v L.G., 238 AD3d 568, 570—571 [1st Dept 2025]). The First Department held that the contempt finding was proper.
A party cannot avoid compliance merely by asserting logistical difficulty or institutional backlog. The burden rests with the contemnor to establish genuine impossibility through concrete evidence of attempted compliance, pursuit of alternatives, and exhaustion of available mechanisms. Where, as here, OMH was aware of longstanding capacity shortages and failed to take meaningful steps to mitigate or accelerate transfer, the defense of impossibility is insufficient.
At the contempt hearing, OMH failed to present sufficient evidence that compliance with the Court's Commitment Order was impossible. The testimony established that on July 17, 2025, the defendant was designated to Kirby Forensic Psychiatric Center but was number 82 on the male waitlist. As of September 30, 2025, he had only moved to 55th position, which means he advanced only 27 places in over ten weeks. OMH nevertheless projected that the defendant would be admitted in December. On December 9, 2025, the Court emailed the parties to inquire about the defendant's status. OMH responded that the defendant remained in DOC custody, had moved to 14th on the waitlist, and was expected to be admitted during the week of December 22. If accurate, OMH will assume custody of the defendant 128 days after this Court directed them to do so. Such a delay cannot be viewed as incidental or unavoidable. It is an unreasonable and unjustified delay.
Despite citing statewide capacity-expansion efforts, OMH failed to present meaningful data demonstrating actual progress or justifying the delay in this case. Counsel reported that OMH monitors and shuffles the waitlist for beds yet could not explain how those practices have produced measurable results. Counsel further relied on the addition of 25 beds at MPC as evidence of compliance. Those beds, however, were added in 2024, have been referenced in prior contempt proceedings, and therefore do not represent a new remedial measure. Counsel also stated that 25 beds had been added at Kirby and 25 beds at Rochester, however, counsel could not provide the date when those beds became available.[FN1]
Moreover, the addition of beds [*4]has had little to no impact on wait times and therefore falls short of meaningfully addressing the issue. Counsel also referenced a 2026 budget allocation for 100 future beds, and a Mid-Hudson expansion scheduled for completion in June 2028 — neither of which offer relief to this defendant or to the dozens currently ahead of him on the list.
OMH argued that there has been a 35 percent increase in CPL § 730 orders since 2021. It also suggested that delays result from courts not promptly issuing orders to produce restored defendants, which in turn slows bed turnover. The Court requested data to verify these claims, including the number of patients affected, the duration of delays, and the stage at which those delays occur. OMH provided no quantitative information in response. Counsel could not confirm whether the cause was attributable to courts, hospitals, transport, or another point in the process. OMH also referenced an increase in denials of Jackson applications but again furnished no data to support the assertion. In every instance, the Court was given unsupported generalities in place of data.
The Court acknowledges that OMH's attempts to increase capacity may be well-intentioned. However, efforts alone are not compliance. Here, despite incremental bed increases and long-term plans for expansion, overall wait times have not improved. Adding 75 beds over the course of 2 years, without a resulting improvement in wait times, does not equal diligent efforts.
The systemic issues cited by OMH are not new, nor unforeseen, and thus do not constitute impossibility. OMH is charged with planning for and responding to precisely these conditions. The contempt finding rests not only on current delay, but on the prolonged failure to create meaningful infrastructure or safeguards to prevent it. OMH's explanations focused primarily on what has been attempted on a statewide level and failed to address why this defendant has been left to languish in jail months after a judicial finding of incapacity. OMH offered no data describing targeted efforts to secure this placement, no expedited plan, and no individualized measures to comply with the Commitment Order. Accordingly, the Court finds that OMH failed to establish impossibility.
For the reasons set forth above, the motion to hold OMH in civil contempt was granted. When a court determines that a defendant is mentally unfit to proceed, the prompt transfer to an appropriate psychiatric facility is essential to the fair administration of justice. Every day that an unfit defendant remains at Rikers without therapeutic care is a day in which restoration is delayed, constitutional protections are frustrated, and human suffering is compounded.
The Court does not dismiss the complexity of statewide capacity issues nor the systemic challenges OMH faces. However, the existence of a broader problem does not diminish OMH's legal obligation to comply with a direct and unequivocal court order, nor does it alter the fact that this defendant has established the elements of civil contempt. Here, OMH failed to effectuate the transfer by the court-ordered deadline. The defendant remains housed at Rikers Island, unable to receive the treatment necessary to restore competency, while the criminal proceedings against him remain at a standstill. The resulting harm is real and ongoing.

 Penalty
Upon a finding of civil contempt, the court is empowered to impose a monetary fine on the offending party. (See Judiciary Law § 753[A] ["A court of record has power to punish, by [*5]fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced"]; see also e.g. McCain, 84 NY2d 216 [1994].)
The defendant requests that the Court impose a one-time fine of $500 for criminal contempt, as well as a fine for civil contempt in the amount of $500 per day for each day he has remained in the custody of DOC since August 16, 2025 (Def. Memorandum of Law at ¶ 19). As a threshold matter, the Court has not found OMH to be in criminal contempt, nor did the defendant seek such a finding. Accordingly, the request for a one-time $500 criminal-contempt fine is denied as moot. With respect to the request for a daily fine of $500 for each day following August 16, 2025, the defendant contends that he has suffered prejudice in two respects: (1) his criminal proceedings have been unnecessarily prolonged, and (2) during the delay caused by OMH's failure he has continued to languish in DOC custody (Def. Memorandum of Law at ¶ 12).
OMH contends that a daily fine of $500 is unwarranted because the defendant has not demonstrated any specific loss or injury (OMH Memorandum of Law at 4—5). This Court disagrees. As previously stated, the delay in providing the defendant with timely psychiatric treatment constitutes a real and demonstrated harm. The defendant cites to his Correctional Health Services ("CHS") medical records, noting that the level of psychiatric care available during his current incarceration is substantially inferior to that which would be provided in an OMH facility. Specifically, he notes that CHS can offer him his psychiatric medication but, unlike OMH, they cannot compel compliance (Def. Memorandum of Law at ¶ 15). Furthermore, the defendant is currently housed at the highest available level of mental-health care at Rikers Island. Even so, following issuance of the Court's Commitment Order, he was twice placed on suicide watch due to self-harm behavior (Def. Memorandum of Law at ¶ 16). Based on the record before the Court, it is evident that the defendant is not likely to return to fitness while he remains confined at Rikers.
OMH also argues that the defendant suffered no loss of liberty in this matter, asserting that he would remain detained "regardless of OMH's conduct, whether at Rikers or in an OMH facility", and could face continued incarceration even after restoration (OMH Memorandum of Law at 2—3). This position overlooks a fundamental premise of the criminal justice system: the defendant is presumed innocent. Although he may remain detained for the time being, the delay in restoring his fitness has directly stalled the criminal proceedings and his ability to proceed to trial. Should a jury acquit, he would be entitled to immediate release. Moreover, bail was initially set in this matter, and the defendant's remand status only followed the fitness determination. Upon restoration, the previously set bail would be reinstated, and the defendant would have the opportunity to secure his release.
OMH further contends that a monetary fine is inappropriate. It argues that the cases cited by the defense — Matter of Kenneth R., 64 Misc 3d 234 [Fam Ct 2019]; In re Lanaya B., 25 Misc 3d 981 [Fam Ct 2009]; and McCain v Dinkins, 84 NY2d 216 — are distinguishable because, in those matters, the contemnors violated multiple court orders, and here, they only delayed in complying with this "solitary court order" (OMH Memorandum of Law at 6). Since L.G., multiple courts have issued contempt findings against OMH under the same circumstances. (See People v. K.W., 84 Misc 3d 788 [Sup Ct, NY County 2024, Ward, J.]; People v. M.T., 86 Misc 3d 1212[A] [Sup Ct, NY County 2025, Drysdale, J.]; People v. G.O., SMZ No. 72115-25 [Sup Ct, NY County, Aug. 6, 2025, Ward, J.] [unpublished]); People v. Y.Q., SMZ No. 73631-25 [*6][Sup Ct, NY County, December 1, 2025, Drysdale, J.] [unpublished]). To suggest that damages are inappropriate because OMH has not repeatedly violated court orders is inconsistent with the documented history of its non-compliance across several courts.
Finally, OMH contends that imposing a monetary fine would create a precedent entitling defendants to compensation whenever immediate, wait-free placement is not achieved (OMH Memorandum of Law at 10). That argument misstates the issue. First, the defendant has satisfied the elements of civil contempt. Second, the delay here is neither brief nor reasonable. The defendant has been waiting 147 days, during which time he has remained in Rikers without access to the psychiatric treatment necessary to restore capacity. This Court is not imposing a fine because OMH failed to secure instantaneous placement; it is imposing a fine because OMH, despite its obligations and longstanding awareness of this problem, failed to take adequate remedial steps, resulting in this defendant languishing at Rikers for nearly five months.
Accordingly, the Court imposes a fine of $100 per day to be paid to the defendant, S.O., retroactive to August 16, 2025, for each day that the defendant remains in DOC custody and $250 for legal fees pursuant to Judiciary Law § 733.
This opinion constitutes the Decision and Order of the Court.
Dated: December 12, 2025
New York, NY
Cori Weston, A.J.S.C.

Footnotes

Footnote 1:At the hearing, the Court requested these dates and explained that such information was necessary to determine whether the newly added beds were created in response to prior contempt findings. In OMH's post-hearing written submission, they again cited the additional beds as evidence of affirmative steps taken to reduce wait times, yet still did not provide the dates on which those beds became available. This omission leaves the Court unable to determine whether these beds represent new remedial action undertaken after prior contempt findings, or whether OMH is again citing beds that existed previously and therefore cannot support their claim of recent compliance.